Raphael S. Tancredi, Richard J. Tancredi and Tancredi Apothecary, Petitioners *v.* Commonwealth of Pennsylvania, State Board of Pharmacy, Respondent.

Argued September 8, 1980, before President Judge CRUMLISH and Judges MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*Richard D. Atkins,* for petitioners.

*Mary R. Shehadi-Wyatte,* Assistant Attorney General, with her *Charles L. Ford,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, October 27, 1980:

Raphael S. Tancredi, Richard J. Tancredi, t/a Tancredi Apothecary (Petitioners) have filed a timely appeal to this Court from the order of the State Board of Pharmacy (Board), which revoked the Pharmacist licenses of Petitioners Raphael and Richard Tancredi and revoked the Pharmacy permit of Petitioner Tancredi Apothecary pursuant to Section 5 of the Pharmacy Act (Act), Act of September 27, 1961, P.L. 1700, *as amended,* 63 P.S. §390-5.

In June of 1976, following an investigation, the Drug Enforcement Agency (DEA) charged Petitioners with eight violations of the Federal Controlled Substances Act, 21 U.S.C. §842(a)(5).[1] An administrative hearing was held and Petitioners entered into a Memorandum of Understanding with DEA. This document did not specifically admit the truth of the charges lodged by DEA, but Petitioners agreed to rectify conditions found objectionable by DEA and to institute procedures in compliance with federal law. The record shows that Tancredi Apothecary received a reprimand as a result of the proceedings instituted by DEA, that a follow-up investigation by DEA revealed that all violations cited by DEA had been corrected, and that the DEA file on Tancredi Apothecary is closed.

The Board issued a citation to Petitioners based on the DEA allegations and a hearing was held on July 19, 1977. At the beginning of the hearing, counsel for the Commonwealth moved to amend the cita-

---

[1] The DEA charges were very similar to the allegations of the Board's citation. The citation contained the following allegations:

1. On September 7, 1976, Respondents were charged by the Drug Enforcement Administration, U.S. Department of Justice, with eight (8) counts of violating 21 U.S.C. Section 842(a)(5) in that Respondents did not and failed to keep dispensing records for varioous controlled substances, §513 of the Drug Abuse Prevention and Control Act.

2. During the period of June 26, 1975, through June 9, 1976, Respondents Tancredi obtained controlled substances by means of DEA order forms, issued pursuant to the Controlled Substances Act.

3. That said forms were not properly recorded in that they did not show the date and amount of controlled substances.

4. Respondents failed to maintain prescriptions Schedule III, IV and V separate from Schedule II controlled substances prescriptions.

tion to include new allegations resulting from an investigation conducted by the Commonwealth prior to the hearing.[2] Petitioners were advised that a continuance would be granted in light of the new allegations, but they chose to proceed with the hearing as scheduled.

The record shows that Petitioners admitted to all but one of the allegations of the citation and admitted to the additional allegations. Petitioners offered testimony only to explain the violations and mitigate the possible consequences thereof. Following the hearing, the Board revoked the licenses of Petitioners Raphael and Richard Tancredi and the permit of Tancredi Apothecary.

Petitioners raise four issues for our review: (1) whether the Board's conclusions of law are supported by the findings of fact; (2) whether the Board's findings concerning the drug Ritalin are based on substantial evidence; (3) whether Pharmacy Regulation 27.18(u), 49 Pa. Code §27.18(u), is invalid because it

5. Respondents failed to forward Copy No. 2 of the DEA order form to the Regional Office following a transfer of Schedule II substances.

6. Respondents failed to take biennial inventory on May 1, 1975.

7. Respondents failed to maintain complete records of purchases and sales of controlled substances.

8. Respondents failed to complete prescriptions where amounts were not indicated by practitioners.

9. Respondents refilled Schedule II controlled substance prescriptions or improperly followed emergency prescription procedures.

[2] The new allegations were as follows:

An investigation of the Tancredi Apothecary revealed that narcotics and dangerous drugs were stored under poor security, unsupervised non-licensed employees worked on prescriptions, a very large amount of very old drugs were stored in the basement, and a large amount of trash and debris was located in the basement.

is based on federal regulations and is, therefore, an unlawful delegation of the Board's rules making power; and (4) whether the Board's order is an unduly harsh and excessive penalty under the circumstances of this case.

## I. Whether the Board's conclusions of law are based on the findings of fact.

### A. Violations of Section 5(a)(6), Section 5(b)(2), and Regulation 27.18(u)

Petitioners assert that the Board's conclusion that they have violated Sections 5(a)(6)[3] and 5(b)(2)[4] of the Act, 63 P.S. §§390-5(a)(6) and 390-5(b)(2) and Regulation 27.18(u),[5] 49 Pa. Code §27.18(u) is only

---

[3] Section 5(a)(6) of the Act provides as follows:

  (a) The board shall have the power to revoke or suspend the license of any pharmacist upon proof satisfactory to it that:

  . . . .

  (6) He has violated or permitted the violation of any provision of this act or regulation of the board.
63 P.S. §390-5(a)(6).

[4] Section 5(b)(2) of the Act provides as follows:

  (b) The board shall have the power to revoke or suspend the permit of any pharmacy upon proof satisfactory to it that:

  . . . .

  (2) The holder thereof has violated any of the provisions of this act or regulations of the board applicable to him or any provision of the Drug, Device and Cosmetic Act or the Federal act, or has ordered a pharmacist in his employ to engage in any aspect of the practice of pharmacy in contravention of any provisions of the aforesaid acts or regulations thereunder.
63 P.S. §390-5(b)(2).

[5] Regulation 27.18(u) provides as follows:

  (u) Any violation by a pharmacist of the Federal Controlled Substances Act (21 U.S.C. §321 *et seq.*) or the Pennsylvania Controlled Substance, Drug, Device and Cos-

a general assertion of violations of The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §780-101 et seq. and the Federal Controlled Substances Act, 21 U.S.C. §801 et seq., and does not provide Petitioners with notice of what particular substantive provisions their conduct violated. Petitioners argue that, because of the Board's failure to determine, at the hearing, such matters as frequency of violations and whether the violations were gross or de minimus, the revocation order is arbitrary and capricious. Based on their alleged ignorance of what provisions of the law they have violated and the Board's failure to ascertain all details surrounding each allegation, Petitioners argue that the Board's conclusion that they have violated provisions of the Act is not supported by the findings of fact.

At the outset of the Board hearing, the Commonwealth's attorney stated that ". . . respondents agree to all allegations (in the citation) except No. 9. . ." The attorney then requested leave to amend the citation to add other charges and stated, "Counsel is willing to stipulate to all of these new violations. . . ." At that point, Petitioners' counsel stated that it was his client's wish to have everything heard at once and "the opportunity to explain all of the allegations, to the best of our ability *in mitigation thereof* and to explain the full extent thereof." (Emphasis added.)

Petitioners now contend they are not bound by the stipulations because they never expressly agreed to them at the hearing. However, at the hearing Petitioners did not allege that the citation lacked suffi-

metic Act of April 14, 1972 (P.L. 233, No. 64) (35 P.S. §§780-101 780-144) or the rules and regulations promulgated thereunder shall constitute a violation of this chapter and of the act.
49 Pa. Code §27.18(u).

cient detail to inform them of what substantive provisions of law they had violated and did not seek clarification of the citation on this or any other basis. Further, Petitioners did not offer evidence that their admitted conduct was not, in fact, violative of the Act. Petitioners presented testimony to explain their conduct, but did not offer any evidence that any violations were few or de minimus. It is clear that Petitioners have waived these issues. Administrative Agency Law, 2 Pa. C. S. §703(a).

Petitioners' tactic before the Board was an obvious attempt to secure leniency in exchange for contrition and a promise of future good behavior. Now that that ploy has failed, Petitioners cannot escape the consequences of their voluntary admission and their conscious decision to offer no defense to the Board.

## B. Violations of Section 5(a)(9)

The Board concluded that Petitioners had violated Section 5(a)(9)[6] of the Act, 63 P.S. §390-5(a)(9),

---

[6] Section 5(a)(9) of the Act provides as follows:

(a) The board shall have the power to revoke or suspend the license of any pharmacist upon proof satisfactory to it that:

. . . .

(9) He is guilty of grossly unprofessional conduct. The following acts on the part of a pharmacist are hereby declared to constitute grossly unprofessional conduct of a pharmacist:

(i) Willfully deceiving or attempting to deceive the State Board of Pharmacy or its agents with respect to any material matter under investigation by the board;

(ii) The advertising to the public of prices for prescriptions, dangerous or non-proprietary drugs, or any reference to the price of said drugs or prescriptions either specifically or as a percentile of prevailing prices;

(iii) The public assertion or implication of professional superiority in the compounding of prescriptions;

based on allegations 1 through 8 and the additional allegations added at the hearing.

Petitioners argue that the conduct alleged to have violated Section 5(a)(9) is not enumerated in the subsection and, therefore, is not grossly unprofessional conduct, citing *Pennsylvania State Board of*

---

(iv) The engaging by any means in untrue, false, misleading or deceptive advertising of drugs or devices;

(v) Paying rebates to physicians or any other persons, or the entering into any agreement with a medical practitioner or any other person for the payment or acceptance of compensation in any form for the recommending of the professional services of either party;

(vi) The entering into of any agreement with a licensed medical practitioner for the compounding or dispensing of secret formula (coded) prescriptions;

(vii) The misbranding or adulteration of any drug or device and the sale, distribution or dispensing of any misbranded or adulterated drug or device as defined in the Drug, Device and Cosmetic Act.[2]

(viii) Engaging in the sale of purchase of drugs or devices whose package bears the inscription "sample" or "not for resale".

(ix) Displaying of permitting the display of his license in a pharmacy of which he is not the proprietor or in which he is not employed;

(x) Any holder of a license or certificate to fail to display same while actually engaged in the practice of pharmacy;

(xi) The acceptance back and redistribution of any unused drug, or a part thereof, after it has left the premises of any pharmacy, whether issued by mistake or otherwise;

(xii) To accept employment as a pharmacist, or share or receive compensation in any form arising out of, or incidental to, his professional activities from any medical practitioner or any other person or corporation in which one or more medical practitioners have a proprietary or beneficial interest sufficient to permit them to exercise supervision or control over the pharmacist in his professional responsibilities and duties;

*Pharmacy v. Cohen,* 448 Pa. 189, 292 A.2d 277 (1972). We agree and hold, therefore, that the Board's conclusion that Petitioners violated Section 5(a)(9) is in error.

## II. Whether the Board's finding concerning Ritalin is based on substantial evidence.

The Board found that, from June 26, 1975 through June 6, 1976, Petitioners filled 110,000 *prescriptions* for the controlled substance Ritalin. The Board found further that the number of *prescriptions* for Ritalin dropped to 1200 for the period from October 1, 1976 to April 22, 1977.

Actually, the record clearly shows that Petitioners had purchased 110,000 tablets of *Ritalin* in the period from June 26, 1975 through June 6, 1976. This means that they could have filled only about 2,619 *prescriptions* of 42 *tablets* each during that period. By the same token, the number of *prescriptions* for Ritalin between October 1, 1976 and April 22, 1977 would have been 29.

The Commonwealth's brief concedes that the Board misstated the amount of Ritalin dispensed by Petitioners. The Board repeated this error in the "discussion" portion of its adjudication. While we cannot agree with Petitioners that the Board's error in this respect mandates a reversal, we are of the opinion that such a gross misstatement is cause for remand. Although the error is an obvious one, we cannot say with certainty that the Board's conclusions

---

(xiii) To accept employment as a pharmacist, or share or receive compensation in any form arising out of, or incidental to, his professional activities from any person who orders said pharmacist, directly or indirectly, to engage in any aspect of the practice of pharmacy in contravention of any provision of this act.

63 P.S. §390-5(a)(9).

and order would be the same if its findings had set forth the correct information.

### III. Pharmacy Regulation 27.18(u)

Petitioners argue that Regulation 27.18(u) is invalid insofar as it attempts to incorporate federal regulations because such in toto adoption of federal regulations is an invalid delegation of the Board's rules making power. Further, Petitioners allege that Regulation 27.18(u) was adopted in violation of procedural requirements as to notice and publication.

Petitioners did not question the validity of Regulation 27.18(u) before the Board. While it is true that the validity of the Act could be questioned on appeal, even though not challenged below, Administrative Agency Law, 2 Pa. C. S. §703(a), we do not deem that this exception to the waiver rule applies to a challenge to regulations promulgated pursuant to the Act. We therefore hold that Petitioners have waived this issue. *Id.*

Our holding on this point is supported not only by the clear language of Section 703, but by practical considerations. This Court cannot make a determination of whether Regulation 27.18(u) was adopted according to proper procedures absent some factual findings. Petitioners clearly could have presented evidence to the Board on this point and created the needed record.

Further the essential issue involved in delegation of power is whether the legislature or agency has abrogated its duty to set standards to guide it in determinations of whether violations of statutes or regulations have occurred. *See, Petty Liquor License Case,* 216 Pa. Superior Ct. 55, 258 A.2d 874 (1969) (Judge CERCONE in dissent). Petitioners have not presented any argument or authority that addresses this issue. It would be useful, if not essential, to this

Court's review for the Board to have the opportunity to deal with the challenge to Regulation 27.18(u).

Finally, Petitioners have not challenged Section 5(b)(2) of the Act, 63 P.S. §390-5(b)(2), although the Board based its revocation of the permit of Tancredi Apothecary thereon and this subsection is almost identical to Regulation 27.18(u). We fail to see how Petitioners can accept the validity of 5(b)(2), where the legislature sets Federal law as a standard, but reject Regulation 27.18(u), where the Board sets Federal law as the standard.

## IV. Revocation Order

Petitioners argue that the Board's order revoking the Pharmacy licenses and permit is an excessive penalty and constitutes an abuse of the Board's discretion. We need not address this contention since we are remanding this case to the Board.

We note that the Board has the power to revoke the license of any pharmacist who has violated any provision of the Act or regulation of the Board. Section 5(a)(6) of the Act, 63 P.S. §390-5(a)(6). Further, the Board has the power to revoke the permit of any pharmacy where the holder has violated any of the provisions of the Act or regulation of the Board or any provisions of the state or federal drug laws or regulations thereunder. Section 5(b)(2) of the Act, 63 P.S. §390-5(b)(2).

Clearly, in the instant case, the Board could have revoked Petitioners' licenses and permit even absent any violation of Section 5(a)(9), 63 P.S. §390.5 (a)(9). However, since it appears that the order of revocation is based partly on behavior that was characterized as grossly unprofessional conduct, but was not, in fact, grossly unprofessional, we deem it necessary to remand to the Board for a review of its revocation order in light of our deletion of Section 5(a)

(9) from this case. *See, Intrieri v. Department of State, Commissioners of Professional and Occupational Affairs and State Board of Pharmacy,* 40 Pa. Commonwealth Ct. 295, 396 A.2d 927 (1979).

Furthermore, the Board may also find it necessary to review its revocation order when it corrects its findings with respect to the amounts of Ritalin purchased and dispensed by Petitioners.

Accordingly, the attached order will be entered.

### ORDER

AND NOW, this 27th day of October, 1980, the order of the State Board of Pharmacy, dated March 28, 1979, revoking the Pharmacist License of Raphael A. Tancredi, the Pharmacist License of Richard J. Tancredi and the Pharmacy Permit of Tancredi Apothecary is hereby remanded for further proceedings consistent with this opinion.

Judge WILLIAMS, JR. concurs in result only.